IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEGON PREFERRED INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>SUSANA ISZTOJKA, d/b/a California Gold Star Hauling,<br><br>　　　　　　Defendant.<br><br>FRANCESCA EISENBRANDT, CONNIE EISENBRANDT, and SCOTT EISENBRANDT, SR.,<br><br>　　　　　　Interveners. | No. 2:07-cv-00526-TMB/KJM<br><br>ORDER<br>[Hearing on Summary Judgment Motions] |

　　　　The Court has reviewed the Findings and Recommendations submitted by the Magistrate Judge at Docket No. 49, and is prepared to rule on the summary judgment motions filed by Plaintiff at Docket Nos. 22 and 23.  Attached hereto is a tentative Memorandum Decision and Order disposing of the motions for summary judgment. The parties are to be prepared to address the tentative decision at the Final Pretrial Conference scheduled for December 5, 2008.

　　　　Dated:  November 26, 2008.

　　　　　　　　　　　　　　　　　　　　　　　s/ Timothy M. Burgess.
　　　　　　　　　　　　　　　　　　　　　　　TIMOTHY M. BURGESS
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEGON PREFERRED INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>    vs.<br><br>SUSANA ISZTOJKA, d/b/a California Gold Star Hauling,<br><br>              Defendant.<br>FRANCESCA EISENBRANDT, CONNIE EISENBRANDT, and SCOTT EISENBRANDT, SR.,<br><br>              Interveners. | No. 2:07-cv-00526-TMB/KJM<br><br>MEMORANDUM DECISION and ORDER<br> [Re: Motions at Docket Nos. 22 & 23] |

      Plaintiff brought this declaratory relief action seeking to rescind an insurance policy issued by Plaintiff to Defendant. Plaintiff filed motions for summary judgment at Docket Nos. 22 and 23, which motions were opposed by the Defendant and the Interveners. The matter was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

      On October 6, 2008, at Docket No. 49, the Magistrate Judge filed Findings and Recommendations recommending that Plaintiff's motion for summary judgment be denied. Plaintiff has filed objections to the Findings and Recommendations.

      In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this Court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, with particular attention to those portions relevant or pertinent to the objections raised, the Court finds the Findings and Recommendations are not supported by the record.

*TENTATIVE*

FACTS

The uncontested facts, as relevant to the determination of the motions before the Court, are:

1.  Defendant Susana Isztojka, d/b/a California Gold Star Hauling (Susana), applied for a commercial motor vehicle from Defendant Integon Preferred Insurance Company (IPIC) through the Mangelli Insurance Agency (Mangelli), a California-licensed insurance agency acting as an insurance broker in the transaction.

2.  At the time of the initial application May 19, 3006, Susana listed Edwin Hanford as the operator of the vehicle but did not list her son, Ian Cu Isztojka (Ian), as an operator of the vehicle to be insured.

3.  The three days later, May 22, 2006, Susana executed IPIC's application form to increase the liability coverage limits to $750,000/$1,000,000.

4.  IPIC issued its policy number CAC 2695291, insuring one driver above age twenty-five with a violation free record of thirty-six months.

5.  No application or document submitted to IPIC listed Ian as, or disclosed that he was, an operator of the insured vehicle.

6.  Ian was the operator of the otherwise insured vehicle at the time of the accident causing the death of the decedent of Interveners Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr.

7.  Ian was under the age of twenty-five, had driven the California Gold Star vehicles for several years preceding the application, and had incurred multiple traffic violations during the preceding thirty-six months.[1]

The Magistrate Judge found:

> It is undisputed that at the time of the initial application, defendant did not list her son as a driver. However, a few days after the initial application was made, on either May 22 or May 23, defendant returned to the Mangelli Insurance Agency. Mangelli Decl. ¶ 8; Istojka (*sic*) Decl. ¶ 7. Plaintiff contends the purpose of the return visit was solely for increasing

---

[1] The record shows that in may 2006 Ian had two prior suspensions fo his driving privileges, six convictions for Vehicle Code violations, one citation pending trial, and one prior accident. Docket 22-2, pp. 16–17.

the liability limits.  Mangelli Decl. ¶ 8, 12.  Defendant avers the purpose of the second visit was to add her son to the policy.  Istojka (*sic*) Decl. ¶ 7.  Defendant's testimony is that she observed Mr. Mangelli run a DMV check of her son's license at that time, and was informed that it would cost an increased premium to add her son to the policy.  She authorized the increased premium, and she was informed by Mr. Mangelli that her son had been added to the policy as of the date of the second visit to the insurance office.  Istojka (*sic*) Decl. ¶¶ 7, 8.  Defendant further avers she received an increased premium billing a few days later.  Istojka (*sic*) Decl. ¶ 9.  Regardless of whether the son was ever added to the policy as a listed driver, the cited evidence is sufficient to raise a triable issue as to whether defendant made a material misrepresentation regarding the proposed drivers for the covered commercial vehicle.  Plaintiff's motions against both defendant and intervenors rest on plaintiff's contention that the insurance company was never informed that defendant's son would be driving the vehicle.  Because there is a triable issue of fact on this issue, the motion for summary judgment should be denied.

## STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[2]  Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[3]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[4]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.  In order to show that a genuine issue of material

---

[2] Fed. R. Civ. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[3] Fed. R. Civ. P. 56(e).

[4] *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint.[5]  Material facts are those which may affect the outcome of the case.[6]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[7]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[8]  The evidence of the non-moving party is to be believed and all justifiable inferences are drawn in his favor.[9]  The moving party has the burden of showing there is no genuine issue of material fact; therefore, he bears the burden of both production and persuasion.[10]  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[11]

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses.[12]  Instead, it generally accepts as true statements made under oath.[13]  However, this rule does not apply to conclusory statements unsupported by underlying facts,[14] nor may the court draw unreasonable inferences from the evidence.[15]

---

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[6] *Id*.

[7] *Id.*

[8] *Id*. at 255.

[9] *Id.*

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[12] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[13] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005).

[14] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

[15] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

(continued...)

APPLICABLE LAW

Generally, a federal court exercising its diversity jurisdiction applies the law of the forum state,[16] including its choice of law rules.[17]  When interpreting state law, this Court is bound by the decisions of the state's highest court.  In the absence of a decision by the highest state court, this Court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[18]

DISCUSSION

<u>Susana Isztojka, d/b/a California Gold Star Hauling</u>.

Accepting, as the Court must, the testimony of Susana as true and viewing that testimony in the light most favorable to her, does not create a triable issue of fact.  The opposition mistakenly assumes, and the Findings of the Magistrate Judge are predicated upon that assumption, that the broker, Mangelli, was the agent of IPIC. Under California law, an insurance broker is the agent of the insured, not the insurer.[19] In this case, it is undisputed that Mangelli acted as a broker, not an agent.[20]  "It is well settled that where, in circumstances such as are presented here, an insurance agent requests insurance from a company which he does not represent, he is acting for the insured, who is responsible for misrepresentations in the application made out by the

---

[15]/(...continued)
*McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir. 1988).

[16]/ *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 974 (9th Cir. 2002).

[17]/ *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).

[18]/ *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 578 (9th Cir. 1998).

[19]/ Cal. Ins. Code §§ 33, 1623; *Fasuyi v. Permatex, Inc.*, 84 Cal.Rptr.3d 351, 365 n.9 (Cal.App. 2008); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 67 Cal.Rptr.3d 917, 923 (Cal.App. 2007).  On the other hand, an insurance "agent" acts on behalf of the insurer. Cal. Ins. Code § 31;

[20]/ Docket 22-2, p. 8 (the "Broker" box is checked).

broker."[21]  As such, the insured, in this case Susana, is responsible for the contents of the application prepared on her behalf by the broker.[22]

Under California law, "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts of which he has knowledge which are or which he believes to be material to the contract."[23]  Thus, "[w]hen a policyholder conceals or misrepresents a material fact on an insurance application, the insurer is entitled to rescind the policy."[24]  "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."[25]  "If a representation is false in a material point . . . the injured party is entitled to rescind the contract from the time the representation becomes false."[26]  "[A] rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable."[27]

That the identity of the operators of the insured vehicle, their ages, and driving records was material to the contact of insurance was material to the issuance of the policy is self-evident.  That Susana was, or should have been, aware of this materiality is also self-evident from the application forms signed by Susana.[28]

---

[21]  *Century Sur. Co. Crosby Ins., Inc.*, 21 Cal.Rptr.3d 115, 120 (Cal.App. 2004) (quoting *Solomon v. Federal Ins. Co.,* 167 P. 859, 861 (Cal. 1917)).

[22]  *LA Sound USA, Inc.*, 67 Cal.Rptr. at 923–24.

[23]  Cal. Ins. Code § 332.

[24]  *LA Sound USA, Inc.*, 67 Cal.Rptr.3d at 922.

[25]  Cal. Ins. Code § 331.

[26]  Cal. Ins. Code § 359.

[27]  *LA Sound USA, Inc.*, 67 Cal.Rptr.3d at 922.

[28]  The initial application form instructed her that "All drivers must be listed, including the named insured, or excluded." Docket 22-2, p.6.  She further certified that she had "fully disclosed on this application the names of all persons who drive my vehicle(s)" and had a "continuing duty to notify the Company of any changes in: . . . the operators of any of the vehicles listed on the policy"  Docket 22-2, p.8.  She also signified that she understood that the insurer could declare the policy null and void if any answer was false, misleading or materially affected the risk being assumed by the insurer.  *Id*.

Accepting as true that on her second trip to see Mangelli, Susana intended to add Ian as a driver on the policy and that Mangelli told her that Ian was added to the policy, does not create a triable issue of fact as to whether IPIC is entitled to rescind. As between Susana and IPIC, Susana is bound by the fact that Ian was also an operator of the insured vehicle was never communicated to IPIC.

Interveners and Susana also argue that IPIC has failed to comply with the Fair Claims Settlement Practices regulations. Specifically, the Fair Claims Settlement Practices regulations place specific time constraints on an insurer to whom a claim has been presented. The regulations require the insurer to accept or deny any claim "immediately" upon receiving proof of the claim, "but in no event more than forty (40) calendar days later. . . ."[29] If the insurer requires more time than this, it is required to give notice of that fact to the insured, "specify[ing] any additional information the insurer requires in order to make a determination and stat[ing] any continuing reasons for the insurer's inability to make a determination. Thereafter, the written notice shall be provided every thirty (30) calendar days until a determination is made or notice of legal action is served. If the determination cannot be made until some future event occurs, then the insurer shall comply with this continuing notice requirement by advising the claimant of the situation and providing an estimate as to when the determination can be made."[30]

Relying on the decision of the California Court of Appeal in *Spray, Gould & Bowers v. Associated Int'l Ins. Co.*,[31] Susana and the Interveners argue that because IPIC failed to comply with this provision it is precluded from bringing this action. The Court disagrees. In a recent decision construing the provision of the Fair Claims

---

[29] Cal. Code Regs., tit 10, § 2695.7(b).

[30] *Id.,* § 2695.7(c)(1).

[31] 84 Cal.Rptr.2d 552, 555-56 (Cal.App. 1999)

Settlement Practices regulations at issue in this case and applying *Spray*, the Court of Appeal held in *City of Hollister v. Monterey Ins. Co.*:[32/]

> Although no decision has held that violations of these requirements may sustain the imposition of an estoppel to assert a procedural condition of coverage, we see no reason to exempt them from the logic of *Spray*. . . . . At worst imposing an estoppel against a procedural defense obligates the insurer to pay what it has agreed to pay when its only defense to payment is brought into being by its own inequitable conduct. The alternative would be that the insurer profits from its own wrong in bringing about the conditions for the insured's loss of coverage. As a risk-spreading mechanism, insurance should carry the true cost of the risk shared-not a cost discounted to reflect some number of unfortunate claimants who can be induced by the insurer to forfeit their benefits. We thus detect neither injustice nor any offense to public policy in holding an insurer subject to estoppel based on its violation of claims practices regulations. Such a result merely means that it is equitably prevented from exploiting procedural violations that are a product of its own failures to comply with governing law.

No California appellate court has held that a violation of the Fair Claims Settlement Practices regulations precludes the bringing of an action to rescind a policy based upon a material misrepresentation. Indeed, the very holdings and rationale of *Spray* and *City of Hollister* are inapposite. First, this case does not involve a procedural defense. Second, the elements of estoppel are simply not present. Unlike *Spray* and City of *Hollister*, the defense being asserted by IPIC was not brought about by its own inequitable conduct. The defense arises solely out of the conduct of Susana in failing to make a full and complete disclosure of all material facts. Consequently, the failure of IPIC to comply with the Fair Claims Settlement Practices regulations does not operate as an estoppel to the bringing of this action.

Accordingly, the Court finds that Susana made material misrepresentations of fact in her application for IPIC Policy Number CAC 2695291, and IPIC is not estopped from bringing this action to rescind the policy.

---

[32/] 81 Cal.Rptr.3d 72, 99 (Cal.App.2008).

Case 2:07-cv-00526-TMB   Document 53   Filed 11/26/08   Page 10 of 16

<u>Interveners Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr.</u>

      The rights of the Interveners stands on a somewhat different footing. Interveners, citing *Barrera v. State Farm Mut. Auto. Ins. Co.*[33] and *United Services Auto. Ass'n v. Pegos*,[34] argue that IPIC failed to make a reasonable investigation of the insurability of Susana in a timely manner and, as a consequence, they may still bring an action on the policy. In *Berrara*, a year and a half prior to the accident, the insured driver misrepresented on his application that his drivers license had not been suspended, revoked or refused at any time in the previous five years. In *Pegos*, the insured added two new vehicles to an existing policy, one of which had a commercial license plate. USAA sought to rescind based upon a misrepresentation that the vehicles would not be used to carry passengers for hire. Other than to ask the insured about the intended use of the cars, USAA conducted no further investigation. Five weeks later, the insured was in an accident driving one of the vehicles.

      *Barrera*, in reversing the trial court judgment in favor of the insurer, held:[35]

> [A]n automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured. Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application.

The California Supreme Court further held:[36]

>     Failure of the automobile liability insurer reasonably to investigate the insurability of the insured within a reasonable time after issuance of the policy, as described above, results in the loss of the carrier's right to rescind, as opposed to its right to cancel, the policy. Thus, if, in such a case, the insurer has not timely rescinded an automobile liability policy

---

[33] 456 P.2d 674 (Cal. 1969).

[34] 131 Cal.Rptr.2d 866 (Cal.App. 2003).

[35] *Barrera*, 456 P.2d at 678.

[36] *Id.*, 456 P.2d at 689.

MEMORANDUM DECISION and ORDER
*Integon Preferred Ins. Co. v. Isztojka*,
2:07-cv-00526 (TMB/KJM)      9      *TENTATIVE*

prior to an accident in which the insured negligently injures a third person, the policy necessarily remains in effect at least through the time of the accident; the insurer cannot thereafter rescind, but only cancel the policy. After the injured person has obtained a judgment against the insured, therefore, he may compel the insurer to pay the judgment to the extent of the monetary limits set forth in the Financial Responsibility Law.

The court summarized the public policy considerations underlying the ruling as follows:[37/]

> With respect to an insurance policy voidable under the Insurance Code, if an automobile liability insurer can perpetually postpone the investigation of insurability and concurrently retain its right to rescind until the injured person secures a judgment against the insured and sues the carrier, then the insurer can accept compensation without running any risk whatsoever. Such a rule would permit an automobile liability insurer to continue to pocket premiums and take no steps at all to probe the verity of the application for the issued policy unless and until the financial interest of the insurer so dictated. Furthermore, under such a rule, the carrier would be permitted to deal with the insured as though he were insured, and thus to lead him to believe that he was in fact insured.

*Pegos* extended the duty to investigate the situation where an insured adds a new car to the policy, i.e., just as when a new driver is added to the policy, the insurer must conduct a reasonable investigation into the insurability of the driver, when a new car is added to the policy, the insurer must investigate the insurability of the vehicle.[38/] "Merely asking the insured questions about his or her driving record or his or her car may or may not constitute a reasonable investigation under the circumstances."[39/]

Susana completed her initial application on Friday, May 19, 2006, and her application for increased liability coverage limits on Monday, May 22, 2006. The accident that claimed the life of Intervener's decedent occurred on the following Friday, May 26, 2006, four days later. Under *Barrera* two elements must coalesce before Interveners may recover: (1) IPIC must have failed to investigate the insurability of

---

[37/] *Id.*, 456 P.2d at 682.

[38/] 131 Cal.Rptr.2d at 870.

[39/] *Pegos*, 131 Cal.Rptr.2d at 871.

Susana within a reasonable time *after* the application is accepted and the policy issued; *and* (2) that reasonable time must have expired *before* the accident.  In other words, Interveners rights under *Barrera* survive only if (1) IPIC did not conduct a reasonable investigation into insurability and (2) the "reasonable time" within which to conduct that investigation lapsed before the accident.[40/]  This ordinarily constitutes a triable issue of fact.[41/]

    This case is substantially factually different than *Barrera*.  In *Barrera*, the court assumed the insured made material misrepresentations about his driving record.  State Farm failed to investigate the insured's driving driving record.  In remanding, the California Supreme Court directed the trial court to weigh "against the importance of the protection of innocent members of the public against the consequences of automobile owners driving with voidable liability policies" four non-exclusive factors:[42/]  (1) the cost of obtaining that information from the Department of Motor Vehicles (DMV); (2) the availability of that information from the DMV or elsewhere; (3) the general administrative burden of making such an investigation; and (4) whether the defendant insurer had a practice of delaying investigation until the presentation of a significant claim on the insurance policy.[43/]  In this case, under the section entitled "Driver Information," despite the fact that the application for clearly stated in upper case that "ALL DRIVERS MUST BE LISTED, INCLUDING THE NAMED INSURED, OR EXCLUDED," Susana listed one driver.[44/]  It is undisputed that IPIC did investigate the driving record of the one named operator of the insured vehicle.  The application form also included a certification by Susana that: "I further certify that I have fully disclosed on this application the names of

---

    [40/] Contrary to Interveners' argument, there is no duty on the part of the insurer to investigate before it issues a policy.  *Fireman's Fund Ins. Co. v. Superior Court*, 142 Cal.Rptr. 249, 255 (Cal.App. 1977).

    [41/] *Barrera*, 456 P.2d at 489.

    [42/] *Id.*, 456 P.2d at 690 and n.17.

    [43/] In this case, it appears that IPIC policy was to require a search of a driver's DMV records concurrently with completing the application form.

    [44/] Docket 22-2, p. 6.

all persons who drive my vehicle(s)."[45] It further included the statement: "In addition, I understand that I have a continuing duty to notify the Company of any changes in: . . . the operators of any of the vehicles listed on the policy . . . ."[46] As noted above, the evidence clearly and unequivocally establishes that Susana did not disclose on either application submitted to IPIC that Ian was an operator of the insured vehicle, nor was IPIC notified of any change in the named operator.

The initial question is: Did IPIC have a duty to investigate the fact that the application omitted to disclose that Ian was a driver of the vehicle? First, the Court notes that the Interveners raise numerous "red herrings" in arguing that IPIC did not conduct a investigation into the insurability of Susana within the seven-day period between the date the application was submitted and the policy issued, and the date of the accident.[47] Suffice it to say, that none of these form the basis for the IPIC's rescission action.[48] Susana and the Interveners cite no California case in which it was held that a insurer has a duty to investigate every omission made in an application for an insurance policy and, in particular, omitting the identity of every driver of the insured vehicle; nor has independent research by the Court discovered any such authority. Clearly under *Barrera* IPIC had a duty to investigate the driving record of the disclosed driver. Under *Pegos*, IPIC had a duty to investigate the declared use of the insured vehicle.[49] Neither of these is apropos to this case.

---

[45] Docket 22-2, p. 8.

[46] *Id.*

[47] Docket 25, pp. 7–9.

[48] If IPIC were raising any of these as a basis for rescinding the policy, there would, at the very least, be a triable issue of fact whether in issuing the policy with those alleged defects, apparent on the face of the application, IPIC had waived that defect. That is not the case here. Nor, for that matter, did IPIC incur any liability to the Interveners by issuing a policy to a person who was, under its underwriting standards, uninsurable. *Fireman's Fund Ins. Co. v. Superior Court*, 142 Cal.Rptr. at 254.

[49] This Court notes that, although it was not discussed by the court in *Pegos*, at least one of the vehicles added to the policy had a commercial license plate. This at least put USAA on inquiry notice that the vehicle may be used for something other than personal use.

Interveners do not identify what additional "reasonable" investigation IPIC should have conducted during the seven days between the date the policy was issued and the date of the accident.  In *Barrera*, the misrepresentation was easily verified by resort to the public records.[50]  *Barrera* makes clear, that, at least to the extent that the information is readily available from the public records, a reasonable investigation includes resort to the public records.  *Pegos*, on the other hand, provides no hint as to the extent of the investigation required in that case, simply remanding the matter for determination by the jury at trial in light of the *Barrera* factors.  The source of information available to IPIC that would have revealed that someone other than the disclosed driver operated the insured vehicle is unidentified.

Interveners also do not make any argument that the less than five full normal business days between the date the policy was issued and the date of the accident constituted a reasonable time to conduct the unspecified investigation.  Not only have Interveners failed to identify the potential source of the information, but how long it would have taken for IPIC to obtain it and at what cost are not provided.

But perhaps more telling is the admission of Interveners' counsel concerning the knowledge of the broker.[51]  "The agent should have known that the application submitted did not constitute an acceptable risk based upon INTEGON's underwriting requirements, and it was below the standard of care and unreasonable for him to submit the ISZTOJKA application on May 19, 2006."[52]  "Agent Mangelli should have known that the endorsement submitted did not constitute an acceptable risk based upon the face of the Higher Liability Limits Form as well as INTEGON's underwriting requirements, and it was below the standard of care and unreasonable for him to

---

[50] Accepting Susana's testimony, adopted and relied upon by both Susana and Interveners, IPIC complied with *Barrera*.  According to Susana, when she told Mangelli that Ian was to be substituted as or added to the policy as a driver, Mangelli ran a DMV check on Ian. Docket 33, p. 2, ¶ 7. Unfortunately, this information was not provided to IPIC.

[51] As noted, above Interveners incorrectly assume that the broker was the agent of the IPIC.

[52] Docket 25, p. 8, ll. 11–14.

MEMORANDUM DECISION and ORDER
*Integon Preferred Ins. Co. v. Isztojka*,
2:07-cv-00526 (TMB/KJM)               13                            *TENTATIVE*

submit the May 22, 2006, endorsement on that date."[53/]  As the agent of the insured, the knowledge of the broker is imputed to the insured, not the insurer.[54/]  This admission undercuts any argument that Susana had a reasonable expectancy that insurance coverage was in effect.[55/]  This admission effectively undercuts the policy consideration underlying *Barrera* and *Pegos*.

The rule in *Barrera* may be restated as follows:  The right of an insurer to rescind an automobile insurance policy *ab initio* for material misrepresentations does not extend to the rights of third-parties when: (1) there is an independent duty imposed upon the insurer to investigate the misrepresented fact; and (2) the insurer fails to make a reasonable investigation of that fact within a reasonable time after the policy is issued and before the incident giving rise to the third-party's claim against the insured arises.  Applying that rule to this case, the Court finds that, as a matter of law, under the facts and circumstances presented, no duty to investigate the veracity of the representation made concerning the identity of additional possible drivers of the insured vehicle was imposed on IPIC.  Alternatively, the Court finds that, even if IPIC had an independent duty to investigate the existence of another driver of the vehicle, no reasonable, rational jury could find that IPIC had failed to conduct that investigation in a reasonably timely manner prior to the May 26, 2006, accident.

## CONCLUSION and ORDER

There being no genuine triable issue of fact, plaintiff Integon Preferred Insurance Company is entitled to judgment in its favor as a matter of law.  Accordingly,

IT IS HEREBY ORDERED THAT:

---

[53/] Docket 25, p. 9, ll. 8–12.

[54/] *Merchants Fire Assur. Corp. v. Lattimore*, 263 F.2d 232, 240 (9th Cir. 1959) (imputing the knowledge of brokers to the insured); *see also Bonaparte v. Allstate Ins. Co.*, 49 F.3d 486, 489 (9th Cir. 1995) (holding that the knowledge of the broker could not be imputed to the insurer under California law).

[55/] That Mangelli may have told her that coverage of Ian as a driver was in effect cannot, as noted above, be attributed to IPIC.  There is no evidence of any communication between Susana and IPIC during that seven-day period in which IPIC, directly or indirectly, inferred that coverage extended to Ian as a driver.

1.	The Findings and Recommendations filed October 6, 2008, at Docket No. 49, are REJECTED;

2.	Plaintiff's Motions for Summary Judgment at Docket Nos. 22 and 23 are GRANTED; and

3.	Judgment is to be entered herein in favor of Plaintiff and against Defendant Susana Isztojka, d/b/a California Gold Star Hauling and Interveners Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr.  Policy Number CAC 2695291 issued by Plaintiff Integon Preferred Insurance Company to Defendant Susana Isztojka, d/b/a California Gold Star Hauling, is hereby declared null and void *ab initio*; and neither Defendant Susana Isztojka, d/b/a California Gold Star Hauling, nor Interveners Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr. have any rights, nor does Integon Preferred Insurance Company have any obligations, under or pursuant to Integon Preferred Insurance Company Policy CAC 2695291.

The Clerk of the Court to enter final judgment accordingly.

Dated: _____, 2008.

						_____
						TIMOTHY M. BURGESS
						United States District Judge