IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

INTEGON PREFERRED INSURANCE CO.

Plaintiff,

vs.

SUSANA ISZTOJKA, d/b/a California Gold Star Hauling,

Defendant.

FRANCESCA EISENBRANDT; CONNIE EISENBRANDT; and SCOTT EISENBRANDT,

Intervenors.

No. 2:07-cv-00526-TMB

FINAL PRETRIAL ORDER
[Tentative]

This matter is set for a final pretrial conference trial on Tuesday, February 22, 2011. The court has reviewed the trial briefs and final pretrial briefs filed by the parties. Based upon the prior history of this case and the briefs submitted by the parties, the court now enters its tentative Final Pretrial Order.

I. BACKGROUND

This action was initiated by Integon Preferred Insurance Co. ("Integon") against Susana Isztojka (Susana) seeking rescission of a combined, single limit insurance policy in the amount of $1,000,000 issued by Integon. After the policy was issued by Integon, a truck owned by Susana driven by her son, Ian Isztojka ("Ian") was involved in an accident in which Scott Ryan Eisenbrandt, Jr. ("Decedent") was killed. Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr. ("Intervenors"), the survivors of the decedent, were granted permission to, and did, intervene.

This court granted Integon's motion for summary judgment and entered judgment in favor of Integon as against both Susana and Intervenors. In ruling in favor of Integon, this court found that, as matter of law:[1/]

> 1. Defendant Susana Isztojka (Susana), d/b/a California Gold Star Hauling (Gold Star), applied for a commercial motor vehicle insurance policy from Defendant Integon Preferred Insurance Company (IPIC) through the Mangelli Insurance Agency (Mangelli), a California-licensed Fire and Casualty broker-agent.
> 2. At the time of the initial application on May 19, 2006, Susana listed Edwin Hanford as the operator of the vehicle but did not list her son, Ian Cu Isztojka (Ian), as an operator of the vehicle to be insured.
> 3. Three days later, May 22, 2006, Susana executed IPIC's application form to increase the liability coverage limits to $750,000/$1,000,000.
> 4. IPIC issued its policy number CAC 2695291, insuring one driver above age twenty-five with a violation free record of thirty-six months.
> 5. No application or document submitted to IPIC listed Ian as, or disclosed that he was, an operator of the insured vehicle.
> 6. Ian was the operator of the otherwise insured vehicle at the time of the accident causing the death of the decedent of Interveners Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr.
> 7. Ian was under the age of twenty-five, had driven the California Gold Star vehicles for several years preceding the application, and had incurred multiple traffic violations during the preceding thirty-six months.[1/]
>
> [1/] The record shows that in May 2006 Ian had two prior suspensions of his driving privileges, six convictions for Vehicle Code violations, one citation pending trial, and one prior accident. Docket 22-2, pp. 16–17.

This court determined that Mangelli was solely the agent of Susana; therefore, Susana was bound by the fact that Ian was also an operator of the vehicle was never communicated to Integon.[2/] Intervenors appealed to the Court of Appeals for the Ninth Circuit, and the Court of Appeals, finding that a reasonable jury could find that Jeffrey Mangelli ("Mangelli") acted as both Integon's agent and Susana's broker, reversed and remanded.[3/] As noted by the Court of Appeals in its decision:

[1/] Docket No. 55, pp. 2-3.

[2/] Docket No. 55, p. 7.

[3/] Because Susana did not appeal from the final judgment, as to her, it remains the judgment of the court. Accordingly, as between Integon and Susana there is no longer any

> A reasonable jury could find that Jeff Mangelli acted as both Integon's agent and Susana Isztojka's broker because (1) Integon twice referred to Mangelli as its agent in the complaint, indicating that Integon at one point believed Mangelli acted as its agent in the transaction; and (2) according to Susana Isztojka's declaration, Mangelli filled out and submitted her application to Integon, conducted a background check on Ian Isztojka and authorized him as an additional driver, and computed an increased premium which Integon accepted in June 2006.[4/]

After remand to this court, Integon filed an Amended Complaint with leave of court, adding the contention that the vehicle involved in the accident was not an insured vehicle under the terms of the policy. This contention is based upon the allegation that the request to add the vehicle involved in the accident was not communicated to Integon until some hours after the accident. Intervenors contend that Susana requested addition of the vehicle involved in the accident not later than four days before the accident, and that Mangelli authorized the addition of that vehicle at that time.

Also subsequent to the court's granting of summary judgment in this case, a judgment was entered against Susana in the California Superior Court in favor of Intervenors in an amount on excess of $1,000,000. As result of the reversal and remand by the Court of Appeals and the subsequent judgment against Susana, the question before this court is whether or not Intervenors may collect that judgment from Integon under the insurance policy. More specifically, the question is two-fold, whether: (1) Integon is entitled to rescind the policy as to Intervenors; and, if not, (2) the request to add the vehicle involved in the accident was communicated to Integon, or its agent, prior to the accident.

## II. ADVISORY JURY REQUEST

At Docket No. 114 the court ordered the parties to identify those specific material issues of fact to be submitted to the jury for determination. At Docket No. 115 Intervenors responded to the court's Order. In that response, Intervenors request that

---

controversy and she is no longer a party in interest.

[4/] Docket No. 66, p. 2.

an advisory jury be impaneled on the following issues (1) whether Integon materially relied on any concealment by Susana; (2) whether Integon promptly rescinded within the scope of California Civil Code § 1691; (3) whether and to what extent Mangelli was acting as the agent of Integon; and (4) whether Integon conducted a reasonable investigation into the insurability of Susana. At Docket No. 116, Integon responded indicating that, while it had no objections to submission of certain questions to an advisory jury, it did not request that any question be submitted to the jury. Accordingly, the court treats Integon's response a tacit waiver of an advisory jury.

## III. PRETRIAL ISSUES OF LAW

In their briefs, the parties have requested that the court rule on some issues of law prior to the trial. The court now addresses those issues.

1. *Applicability of California's Financial Responsibility Law*

The court has previously addressed this issue.[5]

2. *Ian Isztojka as Permissive User*

That question involves the interpretation of the policy and the reasonable expectations of the insured, purely one of law to be decided by the court under the policy and circumstances of the case.[6] This question, however, becomes an issue only if the policy is not rescinded. Accordingly, the court reserves addressing the question of whether Ian was a permissive user until such time as it becomes necessary.

3. *Abandonment of Rescission*

Intervenors contend that in its Amended Complaint, Integon abandoned the contention that the policy was rescinded. A careful reading of the Amended Complaint does not support Intervenors' contention. The factual allegations in the Amended Complaint, if proven, clearly support rescission of the policy. The Court also notes that in granting the motion for summary judgment, the court found that the policy was

---

[5] Docket No. 113.

[6] *See Minkler v. Safeco Ins. Co. of America*, 232 P.3d 612, 616 (Cal. 2010); *Bank of the West v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992).

rescinded. The reversal by the Court of Appeals addressed the application of *Barrera* [7/] in this case to the Intervenors. Under the remand, if Mangelli were the agent of Integon and Integon failed to conduct a reasonable investigation into insurability within a reasonable time, then as to Intervenors, Integon lost its right to rescind and the policy remained in effect at least through the date of the accident. Given the posture of the case at the time Integon filed its Amended Complaint, it cannot be said that Integon has abandoned rescission as a remedy.

## IV. QUESTIONS TO BE SUBMITTED TO THE JURY/COURT

Turning to the issues Intervenors have requested be submitted to the jury.

1. *Material Reliance by Integon*

In the decision granting Integon's motion for summary judgment, this court explicitly found that Susana's failure to make a full and complete disclosure was material.[8/] Nothing in the decision of the Court of Appeals reversing this court disturbs or otherwise modifies that finding. Indeed, the decision of the Court of Appeals affirmed this determination. Therefore, whether the failure to include Ian as a driver on the application submitted to Integon was material to the decision of Integon in issuing the policy is no longer an issue. With respect to the question raised in the Amended Complaint, the addition of the vehicle involved in the accident to the policy, the court finds as a matter of law that, if Integon prevails on this question, as a matter of law, it is a material misrepresentation.

2. *Timeliness of Rescission*

Intervenors also contend that Integon did not timely rescind the policy. In opposing Integon's motion for summary judgment, Intervenors raised the question of whether Integon was equitably estopped from seeking rescission because Integon failed to accept or deny the Intervenors' claim within 40 days. This court rejected that argument and the Court of Appeals affirmed.

---

[7/] *Barrera v. State Farm Ins. Co.*, 456 P.2d 674 (Cal. 1969).

[8/] Docket No. 66, pp. 7, 9.

Intervenors current contention is that rescission was not timely under California Civil Code § 1691, which requires a party to "promptly give notice to the party to whom he rescinds." If that were the exclusive remedy for Integon, Intervenors' argument might have some merit.

> Rescission is not the exclusive remedy of one who has become entitled to avoid a contract by reason of acts or omissions of the other party to it which are fraudulent in their nature. He may cancel the contract by its rescission; or he may seek affirmative relief in a court of equity for any injury sustained by the wrongful act or omission of the other; or he may set up the fraud by way of defense to an action brought to enforce the apparent liability.[9/]

Although this action was initiated by Integon against Susana, the insured, its posture and nature have changed. As presently constituted, this case is one brought by the Intervenors to collect the judgment they have obtained against the insured, Susana. Furthermore, Intervenors have shown no prejudice by any alleged failure of Integon to give notice of rescission earlier. That is, Intervenors have taken no action, nor suffered any injury or prejudice, as a result of the delay. Given the unique circumstances involved in this case, it is also apparent that Integon "promptly" sought rescission. Accordingly, that question need not be submitted to the jury.

3. *Extent to Which Mangelli was Acting as Agent of Integon*

In its decision granting Integon's motion for summary judgment, this court held:[10/]

> Under California law, an insurance broker is the agent of the insured, not the insurer.[19/] In this case, it is clear that Mangelli acted as a broker, not an agent.[20/] At oral argument Interveners argued that the excerpt of the records of the California Department of Insurance, of which they have requested judicial notice, either establish that Mangelli was acting as an agent or created a triable issue of fact on that point.[21/] The Court disagrees. First, the records show that between February 27, 1998, and January 31, 2008, Mangelli was licensed as a Fire and Casualty broker-agent.[22/] Second, the excerpt does not reveal that either GMAC Insurance or IPIC as having appointed Mangelli as an agent at any time.[23/] "It is well

[9/] *Williamson & Vollner Engineering, Inc. v. Sequoia Ins. Co.*, 134 Cal. Rptr. 427, 433–34 (Cal. App. 1976) (internal quotation marks and citations omitted).

[10/] Docket No. 55, pp. 5–6.

settled that where, in circumstances such as are presented here, an insurance agent requests insurance from a company which he does not represent, he is acting for the insured, who is responsible for misrepresentations in the application made out by the broker."[24] As such, the insured, in this case Susana, is responsible for the contents of the application prepared on her behalf by the broker.[25]

[19] Cal. Ins. Code §§ 33, 1623; *Fasuyi v. Permatex, Inc.*, 84 Cal.Rptr.3d 351, 365 n.9 (Cal.App. 2008); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 67 Cal.Rptr.3d 917, 923 (Cal.App. 2007). On the other hand, an insurance "agent" acts on behalf of the insurer. Cal. Ins. Code § 31.

[20] Docket 22-2, p. 8 (the "Broker" box is checked). At oral argument, Interveners objected to this as being hearsay and, therefore, should not be considered by the Court. The Court disagrees. First, the document was properly authenticated by the declaration of Jeff Mangelli. Docket No. 22-5, p. 2, ¶¶ 3, 4. Second the document qualifies as a business record exception to the hearsay rule. Fed. R. Evid. 803(6).

[21] Docket 54.

[22] *Id.* p. 3

[23] The excerpt shows that in May 2006 Mangelli held appointments as a Life, Accident and Health agent for American National Ins. Co. and Banner Life Ins. Co.; and a Fire and Casualty agent for Foremost Ins. Co. of Grand Rapids, MI and Pacific Specialty Ins. Co.

[24] *Century Sur. Co. Crosby Ins., Inc.*, 21 Cal.Rptr.3d 115, 120 (Cal.App. 2004) (quoting *Solomon v. Federal Ins. Co.,* 167 P. 859, 861 (Cal. 1917)).

[25] *LA Sound USA, Inc.*, 67 Cal.Rptr.3d at 923–24.

Nothing in the decision of the Court Appeals casts any doubt on that ruling. Lest there be a misunderstanding, the question of whether Mangelli was the agent of Susana in preparing and submitting the insurance application is no longer open—he was her agent. The open question is whether Mangelli was also the agent of Integon and the extent to which Mangelli had the authority to waive Integon's underwriting requirements. Specifically, the trier of fact must determine two facts: (1) that Mangelli told Susana that Ian was added to the policy,[11] and (2) if so, did he have the apparent or ostensible authority to bind Integon.

[11] Given Mangelli's deposition testimony discussed further below, this question appears to be in dispute.

4. *Reasonable Investigation Within a Reasonable Time*

As applicable to this case, California law is clear. First, an insurer has a duty to investigate the insurability of the insured within a reasonable time after it accepts the application for insurance and issues the policy.[12] If a motor vehicle insurer fails to investigate the insurability of the insured within a reasonable time after it accepts the application and issues the policy, the insurer may cancel, but not rescind a policy.[13] The policy necessarily remains in effect through date of the accident.[14] Consequently, under California law, if the insurer does not conduct a reasonable investigation into insurability within a reasonable time:

> After the injured person has obtained a judgment against the insured, therefore, he may compel the insurer to pay the judgment to the extent of the monetary limits set forth in the Financial Responsibility Law. (Veh. Code, s 16430.)[15]

The court questions whether, in light of the testimony of Mangelli at his deposition, this is truly an issue in this case. Attached to Intervenors' Trial Brief is the declaration of their counsel to which are attached excerpts of documents that he attests are true and correct copies. Included in those documents are excerpts of the deposition and a recorded interview of Jeffrey Mangelli.

In his deposition, Mangelli testified:

> Q. On that first occasion do you recall her telling you who was going to drive the vehicle?
>
> A. Yes, she had an employee, I think his name was Ed, and I think she said her son, but he didn't qualify for the policy. I think he was underage at that time. I don't remember, but I don't have the MVR in front of me, but he didn't qualify for the policy, so we put Ed on, which was her own employee.
>
> Q. And she told you that both Ed and her son were drivers for the business, correct? She wouldn't have, if you - -

[12] *Barrera*, 456 P.2d at 680–82, 684–85.

[13] *Id.* at 687–89.

[14] *Id.*

[15] *Id.*

A. Yeah, I think she said that she wanted her son and this Ed on the policy, they were going to do this business together.

Q. Do you recall why the son didn't qualify?

A. I think he was underage, and I think he had a bad driving record. He didn't even qualify to begin with, so I did not put him, couldn't fit on the policy, so we didn't put him on the policy.

Q. So you had determined by the time you submitted the application that the son would not qualify?

A. Oh, yeah, yeah, he would not qualify for the policy, so I think the guy's name was Ed, if I remember correctly, because I had gotten his driver's license. She had his -- at that point she came in with his driver's license number, and the guy really looked like my neighbor down the street, Ron, that's why I remember this guy. I remembered him. I never saw him, but I remember his picture on the license because he really looked like my neighbor Ron down the street, and he stuck in my head.

Q. And how do you recall concluding that the son had a bad driving record.

A. I think we pulled his MVR, I think Laura or I pulled his MVR, and I think he was under 21, if I remember right. I don't remember how old he was, but take people when they're 21 and have - -

* * * *

Q. And the run that you did on the son's DMV report, do you still have it?

A. No.

Q. Did you keep it In the file?

A. No.

Q. Why not?

A. Something you pull up on the screen, I didn't print it, I just looked at it and said he cannot be on the policy. And she said "okay, we'll put Ed on here" because he had a clean driving record and that was her employee.

Q. You understood the son was an employee; correct?

A. I don't know if he worked for her or not. I know this guy Ed did, I know that.

Q. Did you ever ask her who would drive the vehicle as part of the company business?

A. Did I ask her?

Q. Uh-huh.

A. Yeah.

Q. Who did she say?

A. Ed.

Q. When did she say that? Did she tell you also that the son drove the truck?

> A. No, she never said anything about her son driving this truck because she knew he couldn't be on the policy. She knew that.[16]

The intervenors also submitted transcript of Mangelli's recorded interview, which contains the following:

> Q. Okay and was anybody here also here when you had this conversation with the insured?
> A. Well yeah the first of it was just her.
> Q. Uh-huh.
> A And then her son had come into the office after we had added the car on so if he come into the office and then he was present and I think it was her husband. I'm not sure if it was him a big guy with curly hair and mustache, overweight a little bit I'm pretty sure it was her husband.
> Q. Okay and were you present also?
> A. Yes sir.
> Q. And what is your name again?
> A. Fernando Guillen.
> Q. And did she ask who could drive the vehicle?
> A. No, what happened was the son had walked in was kind of a slagger and said oh now we have insurance, I can drive this truck and I said no Susana the only person on the policy is Ed and she looked at me and she knew that and then we quoted her and she said no we don't want to put him on there and I said okay and I stood right at the door and said he's not on the policy and then she left and that was it basically that was the conversation. We have two witnesses here that were, you know Fernando was here.
> (Fernando): In my memory the (inaudible) went off for a little while.
> (Jeff): Yeah
> (Fernando): As why he couldn't drive it.
> (Jeff): Yeah.[17]

Assuming that the same testimony is offered at trial, and this court has no reason to believe otherwise, if Mangelli was Integon's agent for the purpose of investigating the insurability of Ian, then the investigation took place and the question

---

[16] Excerpt from Mangelli Deposition, August 30, 2010. Docket No. 94-1, pp. 4–8.

[17] Docket No. 94-1, p. 23

becomes moot. On the other hand, if Mangelli was not Integon's agent for that purpose, then as this court held in granting summary judgment:[18/]

> The rule in *Barrera* may be restated as follows: The right of an insurer to rescind an automobile insurance policy *ab initio* for material misrepresentations does not extend to the rights of third-parties when: (1) there is an independent duty imposed upon the insurer to investigate the misrepresented fact; and (2) the insurer fails to make a reasonable investigation of that fact within a reasonable time after the policy is issued and before the incident giving rise to the third-party's claim against the insured arises. Applying that rule to this case, the Court finds that, as a matter of law, under the facts and circumstances presented, no duty to investigate the veracity of the representation made concerning the identity of additional possible drivers of the insured vehicle was imposed on IPIC. Alternatively, the Court finds that, even if IPIC had an independent duty to investigate the existence of another driver of the vehicle, no reasonable, rational jury could find that IPIC had failed to conduct that investigation in a reasonably timely manner prior to the May 26, 2006, accident.

In reversing, the Court of Appeals held:[19/]

> The district court erred in concluding that the defense to rescission set forth in Barerra v. State Farm Mutual Automobile Insurance Co., 456 P.2d 674 (Cal. 1969) (in bank), is unavailable to the Eisenbrandts, and in the alternative, that Integon could not have conducted a reasonable investigation as to Ian Isztojka's insurability. The district court relied on its conclusion that Ian was never added to the policy, which is a genuine issue of material fact given Mangelli's disputed status. If it is found on remand that Ian was indeed an insured under the policy, then the Barerra defense applies, and it will be up to the trier of fact to determine whether Integon made "a reasonable investigation within a reasonable time after the issuance of the policy" as to Ian's insurability. Id. at 689.

The Court of Appeals made clear that its decision was based upon the error that this court made in deciding the Mangelli's agency status. If Mangelli was not the agent of Integon, any further argument of whether Integon conducted a reasonable investigation within a reasonable time is foreclosed by the prior ruling of this court. Consequently this question will not be submitted to the jury.

---

[18/] Docket No. 55, p. 15.

[19/] Docket No. 66, p.3.

The following questions will be submitted to the jury:

1. Was Jeffrey Mangelli the agent of Integon?

2. Did Jeffrey Mangelli inform Susana Isztojka that Ian was covered under the policy?

All other issues of fact, and all questions of law, will be addressed by the court without an advisory jury. The remaining issues of fact to be determined by the court are:

1. Did Susana Isztojka request that Jeffrey Mangelli add the vehicle involved in the accident to the policy prior to the time of the accident?

2. Did Jeffrey Mangelli advise Susana Isztojka that the vehicle involved in the accident was covered by the policy prior to the accident?

3. Was Jeffrey Mangelli authorized to add the vehicle to the policy without the prior approval of Integon?

4. If Jeffrey Mangelli was not authorized to add the vehicle, did Jeffrey Mangelli obtain the approval of Integon to add the vehicle involved in the accident to the policy prior to the accident?

## V. POSTURE OF THE CASE

As noted above, the posture and nature of this action have materially changed. Due to this change, it is appropriate to alter the course of the trial. Under the current posture and nature of the case, because the Intervenors are seeking to collect from the policy, they have become essentially the equivalent of the plaintiffs in this case. The outcome in this case is dependent for the most part, if not entirely, on the status of Mangelli as the agent of the insured (Susana) and the insurer (Integon). As an insurance broker, Mangelli is the agent of the insured as a matter of law. Under California law the broker presumably acts for and on behalf of the insured, not the insurer.[20] California does, however, recognize that a broker may serve in a dual capacity as the agent of both the insured and the insurer. If this case were submitted

---

[20] Cal. Ins. Code §§ 33, 1623; *Fasuyi v. Permatex, Inc.*, 84 Cal.Rptr.3d 351, 365 n.9 (Cal.App. 2008); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 67 Cal.Rptr.3d 917, 923 (Cal.App. 2007).

without any further evidence as to the status of Mangelli as an agent, Integon would prevail. Consequently, the burden of going forward is, as a practical matter, placed on Intervenors to show that Mangelli was also the agent of Integon and its effect. It is, therefore, appropriate to alter the normal course of the trial, reversing the order in which the parties present their respective cases. In order to more efficiently and logically present the case, the Intervenors will proceed to put on their case first as putative plaintiffs, with Integon assuming the role of the putative defendant.

The parties are further advised that, based upon the representations of the parties at the trial setting conference, this court set this matter for a trial of two to three days duration. The court notes that to a significant extent, the exhibits identified by the parties and witnesses identified by Intervenors, do not appear to offer evidence relevant to the remaining triable issues of fact. As a visiting judge, entailing travel as well as calendar considerations, the court intends to hold the parties to this estimate.

VI. ORDER

The parties are directed to address this tentative order at the final pretrial conference. This tentative Final Pretrial Order will become the Final Pretrial Order except to the extent that it may be modified or amended after the final pretrial conference.

**IT IS SO ORDERED**.

Dated: February 18, 2011

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge