IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEGON PREFERRED INSURANCE CO.,<br><br>               Plaintiff,<br><br>     vs.<br><br>SUSANA ISZTOJKA, d/b/a California Gold Star Hauling,<br><br>               Defendant.<br><br>FRANCESCA EISENBRANDT; CONNIE EISENBRANDT; and SCOTT EISENBRANDT,<br><br>               Intervenors. | No. 2:07-cv-00526-TMB<br><br>MEMORANDUM DECISION<br>and<br>ORDER<br>[Re: Motion at Docket No. 153] |

      On February 22 through February 25, 2011, this matter came on regularly for trial before the Court sitting with an advisory jury. Robert A. Latham and Paul D. Loreto appeared on behalf of Plaintiff Integon Preferred Insurance Company. Kirk J. Wolden and Christine M. Doyle appeared on behalf of Intervenors Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr. Defendant Susana Isztojka did not appear at trial. The Court, being fully advised in the matter, now renders its decision, which constitutes the Court's Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52.[1]

I. BACKGROUND

      This action was initiated by Integon Preferred Insurance Co. ("Integon") against Susana Isztojka (Susana) seeking rescission of a combined, single limit insurance policy in the amount of

---

[1] Rule 52(a) provides in relevant part: "In an action tried on the facts without a jury or with an advisory jury, the court must state the facts specially and state its conclusions of law separately. The findings and conclusions may . . . appear in an opinion or a memorandum of decision filed by the court."

$1,000,000 issued by Integon. After the policy was issued by Integon, a truck owned by Susana driven by her son, Ian Isztojka ("Ian"), was involved in an accident in which Scott Ryan Eisenbrandt, Jr. ("Decedent") was killed. Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr. ("Intervenors"), the survivors of the decedent, were granted permission to, and did, intervene.

This Court granted Integon's motion for summary judgment and entered judgment in favor of Integon against both Susana and Intervenors. In ruling in favor of Integon, this Court found the following facts to be true:[2]

> 1.  Defendant Susana Isztojka (Susana), d/b/a California Gold Star Hauling (Gold Star), applied for a commercial motor vehicle insurance policy from Defendant Integon Preferred Insurance Company (IPIC) through the Mangelli Insurance Agency (Mangelli), a California-licensed Fire and Casualty broker-agent.
> 2.  At the time of the initial application on May 19, 2006, Susana listed Edwin Hanford as the operator of the vehicle but did not list her son, Ian Cu Isztojka (Ian), as an operator of the vehicle to be insured.
> 3.  Three days later, May 22, 2006, Susana executed IPIC's application form to increase the liability coverage limits to $750,000/$1,000,000.
> 4.  IPIC issued its policy number CAC 2695291, insuring one driver above age twenty-five with a violation free record of thirty-six months.
> 5.  No application or document submitted to IPIC listed Ian as, or disclosed that he was, an operator of the insured vehicle.
> 6.  Ian was the operator of the otherwise insured vehicle at the time of the accident causing the death of the decedent of Interveners Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr.
> 7.  Ian was under the age of twenty-five, had driven the California Gold Star vehicles for several years preceding the application, and had incurred multiple traffic violations during the preceding thirty-six months.[1]
>
> [1] The record shows that in May 2006 Ian had two prior suspensions of his driving privileges, six convictions for Vehicle Code violations, one citation pending trial, and one prior accident. Docket 22-2, pp. 16–17.

This Court determined that Jeffrey Mangelli ("Mangelli") was solely the agent of Susana; therefore, Susana was bound by the fact that Ian was also an operator of the vehicle was never

---

[2] Docket No. 55, pp. 2–3.

MEMORANDUM DECISION and
ORDER [Re: Motion at Docket No. 153]
[*Integon Preferred Ins. Co. v. Isztojka*, 2:07-cv-00526-TMB]    2

communicated to Integon.[3/]  Intervenors appealed to the Court of Appeals for the Ninth Circuit, and the Ninth Circuit, finding that, because Integon had pleaded in its complaint that Mangelli was the agent of Integon a reasonable jury could find that Mangelli acted as both Integon's agent and Susana's broker, reversed and remanded.[4/]  As between Integon and the Intervenors, the effect of the reversal and remand was to restore the *status quo ante*.  The insurance policy was not rescinded, and the Intervenors rights to recover any judgment rendered against Susana from Integon unaffected.[5/]

Subsequent to the Court's grant of summary judgment in this case, a judgment was entered against Susana in the California Superior Court in favor of Intervenors in an amount in excess of $1,000,000.[6/]  As result of the reversal and remand by the Court of Appeals and the subsequent judgment against Susana, the question before this Court became whether or not Intervenors may collect that judgment from Integon under the insurance policy.  More specifically, the question was whether Integon was entitled to rescind the policy as to Intervenors.[7/]  The Court entered a Final Pretrial Order, which "control[led] the course of the action.[8/]  All prior pleadings were superceded.  Claims, issues, defenses, or theories not included in the pretrial are waived even if they appeared in the pleadings and, conversely, the inclusion of

---

[3/] Docket No. 55, p. 7.

[4/] Docket No. 69.

[5/] Because Susana did not appeal from the final judgment, as to her, it remains the judgment in the case. Accordingly, as between Integon and Susana, at the time of trial there was no longer any controversy, and she was no longer a party in interest.  This does not mean, however, that the policy was rescinded.  Quite to the contrary—it was not.

[6/] Docket No. 151, pp. 5–6.  The Court takes judicial notice of that judgment.  Fed. R. Evid. 201.

[7/] A second contention raised by Integon, whether Susana requested the addition of the vehicle involved in the accident was communicated to Integon, or its agent, prior to the accident, was withdrawn prior to the trial.

[8/] Fed. R. Civ. P. 16(d).

any claim, issue, defense, or theory in the pretrial order is deemed to amend any previous pleading that did not include that claim, issue, defense, or theory.[9]

## II.  JURY VERDICT

At the conclusion of the presentation of the evidence, the following questions were submitted to the advisory jury:

1. Did Jeffrey Mangelli informed, or caused Susana Isztojka to believe, that Ian Isztojka was covered as a driver under the policy?

2. Did Integon Preferred Insurance Company give Jeffrey Mangelli the authority to tell Susana Isztojka that Ian Isztojka was covered under the policy?

The advisory jury answered both question in the affirmative.[10]  For the reasons discussed in subpart IV.B., below, the Court accepts and adopts the findings of the advisory jury.

## III.  POST-TRIAL BRIEFING

Following trial, the Court directed the parties to further brief the following issue, reserved for determination by the Court:  (1) whether the decision of the California Supreme Court in *Barrera v. State Farm Ins. Co.*[11] applied to this case: and (2) if so, which provision of California law applies.[12]  The parties have complied.[13]  Intervenors have also moved for the award of prejudgment interest and costs incurred in this action,[14] and to recover the costs incurred in the state court action in excess of the policy limits.[15]  The Court has determined that oral argument would not materially assist in resolving the matter.  Accordingly, the matter is, therefore, submitted for decision on the evidence adduced at trial, the verdict of the jury, and the post-trial briefing by the parties.

---

[9] *Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 474 (2007).

[10] Docket No. 139.

[11] 456 P.2d 674 (Cal. 1996).

[12] Docket No. 141.

[13] Docket Nos. 142, 143, 150, 152.

[14] Docket No. 145.

[15] Docket No. 146.

Although Integon concedes that *Barrera* is inapplicable to this case rendering that issue moot, Integon contends that the only right the Intervenors have to recover from Integon is if *Barrera* applied. Intervenors, in addition to agreeing that *Barrera* is inapplicable, also seek to recover the costs incurred in the state court action and prejudgment interest. Initially, the Court notes that the parties failed to raise these issues in their proposed pretrial orders. Ordinarily, in the absence of good cause showing why the Final Pretrial Order should be modified, issues that are not included in the Final Pretrial Order have been waived.[16/]

Both parties seek relief outside the scope of the Final Pretrial Order and neither party has requested that the Final Pretrial Order be amended. However, neither party has objected to consideration by this Court of those issues, and the issues have been fully addressed by the parties. Accordingly, the Court deems the parties' submission of these issues for decision as the functional equivalent of unopposed motions to amend the Final Pretrial Order, and grants the deemed motions.[17/]

At Docket No. 153, Integon has renewed its Federal Rule of Civil Procedure 50 motion for judgment as a matter of law. Intervenors have opposed that motion.

---

[16/] *See El-Hakem v. BJY, Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005).

[17/] In its reply brief at Docket No. 150, Integon argues that the Intervenors lack any right to affirmative relief because of a failure to comply with Fed. R. Civ. P. 24(c). The Court rejects that argument. As noted above, the Final Pretrial Order superceded the pleadings and cured any deficiencies. Integon now seeks to essentially rescind the Final Pretrial Order. Having failed to raise this question despite numerous opportunities to do so, including failing to object to the Final Pretrial Order and proceeding to trial, Integon has waived any objection to the deficiency in the pleadings. The Court further notes that the fact that the posture of the case had changed was suggested by Integon in its motion to file an amended complaint. Indeed, Integon based its motion to amend the complaint on the need for finality and in the interests of judicial economy so the court could dispose of all insurance coverage issues. *See* "Notice of Hearing on Plaintiff's FRCP Rule 15(a)(2) Motion for Leave to File Its Amended Complaint," Docket No. 72, p. 2. It is as inexplicable as it is unexplained why the deficiency in the pleadings is not waived by proceeding to trial on the basis of the Final Pretrial Order, or how refusing to allow it to be raised at this point in any way prejudices Integon. *See* Fed. R. Civ. P. 61 "Harmless Error."

IV.  DISCUSSION

A.  **Applicable Substantive Law**

Generally, a federal court exercising its diversity jurisdiction applies the law of the forum state,[18] including its choice of law rules.[19] "Under the *Erie* doctrine," it is long settled, "federal courts sitting in diversity apply state substantive law and federal procedural law."[20] Although a federal court when exercising diversity jurisdiction over state law questions follows state substantive laws, it usually applies federal procedural rules.[21]

In this case, the rule of decision was California law.  Thus, this Court will apply California substantive law and federal procedural law in determining the remaining issues before it.  When interpreting state law, this Court is bound by the decisions of the state's highest court.[22] In the absence of a decision by the highest state court, this Court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[23]

---

[18] *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 976, 980 (9th Cir. 2002).

[19] *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).

[20] *Gasperini* v. *Center for Humanities, Inc.*, 518 U. S. 415, 427 (1996); *see Erie R. Co. v. Tompkins,* 304 U. S. 64 (1938); 28 U.S.C. § 1652 ( "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.").

[21] *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 830–32 (9th Cir. 2006).

[22] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law"); *West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[23]  *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc*.), 163 F.3d 570, 578 (9th Cir. 1998).

B.     **Renewed Rule 50 Motion**

At the conclusion of evidence, Integon moved for judgment as a matter of law,[24] which the Court denied. At Docket No. 153, Integon has renewed that motion.[25] In its renewed motion, Integon contends that there was insufficient evidence to support either the finding that Mangelli caused Susana to believe that Ian was covered under the policy or that Mangelli had the authority to so do. In ruling on a renewed motion for judgment as a matter of law:

> It is thus Rule 50(a) that sets out the standard for granting Rule 50(b) motions—whether there is a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on [an] issue," and, if not, whether "a claim or defense . . . can, under the controlling law, be maintained or defeated only with a favorable finding on that issue." Fed.R.Civ.P. 50(a). "Sufficient evidence" is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). [26]

A district court may grant a motion for judgment as a matter of law "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."[27]

Integon argues, that because Susana's testimony is self-serving and uncorroborated, it is insufficient to create a triable issue of fact.[28] The Court disagrees.

Integon's first argument is that there is insufficient evidence to establish that Mangelli informed Susana, or caused her to believe, that Ian was a covered driver under the policy. Integon focuses on the conflicting testimony of Susana and that of an Integon witness, Sharon Dowell, concerning whether Susana received a premium notice that reflected an increased premium because Ian was added to the policy. Susana testified that she did receive a premium notice increasing the premium for adding Ian, but because the premium notices "disappeared,"

---

[24] Fed. R. Civ. P. 50(a).

[25] Fed. R. Civ. P. 50(b).

[26] *Fisher v. City of San Jose*, 509 F.3d 952, 957 (9th Cir. 2007) (alterations in the original).

[27] *Id.*

[28] Citing *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1061 (9th Cir. 2004); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

she was unable to produce them.[29] On the other hand, Sharon Dowell testified that the records of Integon did not contain a premium notice that reflected an increase in premium as a result of adding Ian as a driver to the policy.[30] Even if the Court were to reject Susana's testimony on this point, Integon's argument begs the question: what is the relevance of a dispute over whether there was a premium increase for adding Ian to the policy to the issue of what did, or did not, transpire between Susana and Mangelli? Whether or not adding Ian to the policy increased the premium has no probative value with respect to the question submitted to and answered by the jury in the affirmative: to wit, that Mangelli informed, or caused Susana to believe, that Ian was covered as a driver under the policy.

Integon also contends that no evidence was introduced at trial that Integon gave Mangelli actual authority to bind Integon, or that Integon led Susana to believe that Mangelli had such authority. What Integon overlooks is that, as the Ninth Circuit held, because Integon had pleaded in its complaint that Mangelli was the agent of Integon, a reasonable jury could find that Mangelli acted as both Integon's agent and Susana's broker. Consistent with the Ninth Circuit's mandate, the jury was instructed that the jury should give this the same weight and effect, neither greater not lesser, as any other evidence and was to be considered in light of all other evidence on the question of whether Mangelli was the agent of Integon.[31] In its motion, other than to discuss the conflict in the testimony between Susana and Sharon Dowell concerning whether there was a premium increase for adding Ian to the policy, Integon does not refer to any evidence in the record that negates the jury's finding on the second question submitted to it—that Mangelli had the authority, as Integon's agent, to inform, or cause Susana to believe, that Ian was an additional driver covered by the policy. As instructed, the jury was entitled find that Mangelli was, in fact, Integon's agent with the requisite authority.

---

[29] Docket No. 153, p. 4.

[30] Docket No. 153, pp. 2–3.

[31] Jury Instruction No. 5, Docket No. 131, p. 5. Integon did not object to this instruction; nor, does Integon now contend that the jury was improperly instructed on the issue.

Integon has failed to satisfy the requirements for the entry of judgment in its favor as a matter of law. Accordingly, the renewed motion under Rule 50 at Docket No. 153 is denied.

**C.     Merits**

1.     *Applicability/Effect of Barrera*

Integon, the party having raised the issue in the first instance, has conceded that *Barrera* is inapplicable to this case. Integon, however, contends that the only right the Intervenors have to recover from Integon is if *Barrera* applied. The Court disagrees.

The Court agrees with Integon that, because Susana did not appeal from that judgment, as to her, the judgment rescinding the policy is *res judicata*. Integon argues that, because there was no policy in effect, Intervenors, as third-party beneficiaries, are precluded from enforcing the policy under California's "direct action" statute.[32] Integon, however, misconstrues the effect of the decision of the Ninth Circuit on the rights of the Intervenors in this case. The Ninth Circuit expressly ruled that this Court erred in finding Mangelli was solely the agent of Integon and that Susana made material misrepresentations, thereby negating Integon entitlement to rescind the policy. Thus, Integon's argument runs up against two legal doctrines: law of the case and the rule of mandate.

Under the law of the case doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case.[33] The law of the case doctrine is not, however, a shackle without a key. As long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[34] A court may depart from the law of the case doctrine where: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening

---

[32] Cal. Ins. Code § 11580(b); *see Garamendi v. Golden Eagle Ins. Co.*, 10 Cal. Rptr. 3d 724, 738–39 (Cal. App. 2004); *Reliance Ins. Co. v. Superior Court*, 100 Cal. Rptr. 2d 807, 809–10 (Cal. App. 2000); *Hand v. Farmers Ins. Exch.*, 29 Cal.Rptr2d 258, 265–66 (Cal. App. 1994).

[33] *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

[34] *City of Los Angeles, Harbor Div. v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."[35/]  None of these conditions exist in this case.

The Ninth Circuit has explained that, under the rule of mandate:

> "When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. . . . But the [district court] may consider and decide any matters left open by the mandate of this court . . . ."[36/]

"Thus, a district court could not refuse to dismiss a case when the mandate required it, and a district court could not revisit its already final determinations unless the mandate allowed it."[37/] In this case, revisiting its determination that the policy was rescinded as applied to the Intervenors was not only permitted by the mandate—it was required. Under controlling Ninth Circuit precedent, the rule of mandate, which limits a district court's authority, is jurisdictional in nature.[38/]

The Ninth Circuit has spoken. While Integon's argument is creative, it is not persuasive. Integon has not presented any argument that even remotely supports either reconsideration or that it depart from the rule of mandate. For this Court to do so would be contrary to the implicit, if not explicit, decision and mandate of the Ninth Circuit. This, the Court may not do.[39/]

---

[35/] *Jeffries v. Wood,* 114 F.3d 1484, 1489 (9th Cir.1997) (en banc) (footnote and internal quotes omitted); *see Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[36/] *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255–56 (1895)).

[37/] *Id.* at 981–82 (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)).

[38/] *See United States v. Pimental*, 34 F.3d 799, 800 (9th Cir. 1994).

[39/] To accept Integon's argument would essentially render reversal by the Ninth Circuit without any effect whatsoever, i.e., this Court would simply reinstate its prior judgment. This Court will not be so
(continued...)

2.    *Costs in State Court Action*

Intervenors seek to recover the $1,476,494 in costs awarded to them in the state court action.[40/] The Court ordered Intervenors to file a true and correct copy of the cost bill and order allowing those costs filed in the state court.[41/] Intervenors filed the cost bill and order allowing the costs on March 25, 2011.[42/] Integon has opposed the request.[43/]

The Court noted in its Final Pretrial Order that the posture of this case changed between the time that Integon filed its complaint. As result of intervening events, i.e., the state court judgment in favor of Intervenors, the case essentially became the functional equivalent of an action by the Intervenors to satisfy their judgment against the insured, Susana, from the insurer, Integon. The case proceeded to trial in that posture, i.e., with Intervenors as plaintiffs.

The $3,964,030.77 awarded Intervenors by the state court in damages greatly exceeds the $1,000,000 policy limit. Thus, the question becomes: may Intervenors may collect the costs from Integon notwithstanding it would exceed policy limits. In answering that question in the affirmative, Intervenors rely on the Additional Payments clause in the policy, which provides in relevant part:

---

[39/](...continued)
presumptuous as to assume that the Ninth Circuit disregarded the jurisdictional requirement that it only decide cases or controversy, a bedrock principle of federal jurisdiction, and rendered a purely advisory opinion having no effect on the ultimate outcome.

[40/] Docket No. 146.

[41/] Docket No. 148.

[42/] Docket No. 149.

[43/] Docket No. 155. The Court has considered and summarily rejects Integon's "unclean hands" argument. For this purpose the Court accepts as true Integon's contention that Intervenors waited two years between obtaining a tentative award of $1.1 million against Susana before having a final judgment against her. Integon has suffered no harm or injury by that delay, which was completely subsumed by the time this action was pending. As discussed in IV.C.3, below, assuming that final judgment were entered by the state court at the time of the "tentative" award, under California law Intervenors would be entitled to recover the post-judgment interest as pre-judgment interest in this case.

>We will pay, in addition to our Limits of Liability:
>1. All costs we incur in the settlement of a claim or defense of a lawsuit seeking damages payable under the terms of this Policy.[44/]

The language of that provision, however, does not support the Intervenors. An insurance policy, as with any other contract, must be interpreted according to the plain meaning a layperson would ordinarily give it, unless the parties used a word in the technical sense or it has special meaning due to usage.[45/] California law is clear that, where an insurer has agreed to make supplemental payments of the costs taxed against the insured, it is viewed as a part of the obligation to defend, not its general liability coverage.[46/] Therefore, in those cases, the costs taxed against the insured in excess of the liability limit are recoverable. In this case, the policy is a "Combined/Single Limit" policy with a maximum liability of $1,000,000. Unlike those cases in which the insurer agreed to pay the costs taxed,[47/] the policy language in this case is limited to the costs incurred by the insurer, Integon, in defending the lawsuit. It does not include the costs recoverable by the injured third-party. Thus, in this case, given its ordinary meaning, that provision does not authorize recovery in excess of the liability limits.

The Court also does not agree with Intervenors' position that the decision of the California Supreme Court in *Pilimai v. Farmers Ins. Exch. Co.*[48/] represents a general public policy that the inclusion of the costs in the state court action overrides the liability limitation in an insurance policy. Under California law, "[e]xcept as otherwise expressly provided by statute,

---

[44/] Docket No. 1-2, p. 20.

[45/] *See Waller v. Truck Ins. Exh., Inc.*, 900 P.2d 619, 627 (Cal. 1995); *ATU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990); *Reserve Ins. Co. v. Pisciotta*, 640 P.2d 764, 767-78 (Cal. 1982); *Crane v. State Farm Fire & Cas. Co.*, 485 P.2d 1129, 1130 (Cal. 1971).

[46/] *See, e.g., State Farm General Ins. Co. v. Mintarsih*, 95 Cal. Rptr. 3d 845, 853 (Cal. App. 2009); *Employers Mut. Cas. Co. v. Philadelphia Indemn. Ins. Co.*, 86 Cal. Rptr. 3d 383, 390–91 (Cal. App. 2008); *Pritchard v. Liberty Mut. Ins. Co,*, 101 Cal. Rptr. 2d 298, 312–13 (Cal. App. 2000).

[47/] *See, e.g., Mintarsih, supra*, (agreed to pay as supplemental payments "the expenses we incur and costs taxed against you"); *Employers Mut. Cas. Co., supra*, ("costs taxed against the insured in the suit"); *Prtichard, supra* ("costs taxed against the insured in the 'suit'").

[48/] 137 P.3d 939 (Cal. 2006).

a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."[49/] *Pilimai* involved the a collection action by the insured from the insurer under the California uninsured motorists statute.[50/] The California Supreme Court held that, the fact they would exceed the limitation on damages recoverable from an insurer notwithstanding, costs in excess of the policy limits were recoverable by the insured from the insurer.[51/] Under California law, "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."[52/] In *Pilimai*, the issue was whether, in an action between the insured and the insurer under the uninsured motorist provision, the recovery of costs was precluded by otherwise applicable law. In ruling against the insurer, *Pilimai* held that it did not. This case, however, involves an action by the injured party, not the insured, against the insurer. Thus, both the holding and the underlying rationale of *Pilimai* are inapposite to this case—an action by the third party to collect a judgment against the insured from the insurer. At most, *Pilimari* supports an award of costs incurred by the Intervenors in prosecuting this action, which they are entitled to under federal procedure in any event.[53/]

Contrary to the arguments of Intervenors, this Court finds the reasoning underlying *Pilimai* persuasive in predicting that the California Supreme Court would reach an opposite result under the facts in this case—*not* allow Intervenors to recover costs in excess of the policy limits.

Even if the Court were to apply *Pilimai* to this case, Intervenors likely would not be entitled to recover the entirety of the costs awarded in the state court action. Of the costs assessed in the state court action against Susana, $1,408,587 represented prejudgment interest under California law. Under California law, interest is normally an element of damages, not

---

[49/] Cal. Civ. Code § 1032(b).

[50/] Cal. Ins. Code § 11580.2.

[51/] 137 P.3d at 944–46.

[52/] Cal. Civ. Code § 1032(b).

[53/] Fed. R. Civ. P. 54(d).

MEMORANDUM DECISION and
ORDER [Re: Motion at Docket No. 153]
[*Integon Preferred Ins. Co. v. Isztojka*, 2:07-cv-00526-TMB]               13

costs.[54/] In this case, it is uncontested that the Intervenors made an offer in the state court action to accept the policy limits in full satisfaction of their claims.[55/] This offer was not accepted. Intervenors then obtained a judgment in their favor in excess of that offer.[56/] As a consequence, the Intervenors were entitled to recover prejudgment interest at the legal rate of ten percent (10%) per annum from the date the Intervenors tendered their offer of judgment through the date the judgment is satisfied.[57/] Under California law, prejudgment interest awarded in cases where the defendant rejected an offer of judgment is considered an item of cost.[58/] The *Pilimai* court held that, because interest recoverable under § 3291 is limited to personal injury claims sounding in tort, not to collect on an insurance policy, sounding in contract, § 3291 did not apply in that case.[59/] Accordingly, even if the Court were to apply *Pilimai*, to the extent that the costs awarded Intervenors in the state court action constituted prejudgment interest, it is not recoverable from Integon.

Intervenors face another hurdle. The costs taxed in the state court are subject to apportionment under California law. The state court awarded $3,964,030.77 in damages. Of that, $1,000,000 was covered by the insurance policy issued by Integon. Susana was effectively self-insured for the balance, the functional equivalent of an issuer of an excess insurance policy.

> Multiple insurers on the same risk have reciprocal rights and duties that arise out of equitable principles. The loss is distributed in a ratio that reflects the percentage of total coverage provided by each insurer's policy. There are various methods a trial court may choose for determining an equitable allocation. They

---

[54/] *Lineman v. Schmid*, 195 P.2d 408, 411 (Cal. 1948).

[55/] Docket No. 149-8.

[56/] Docket No. 149-7.

[57/] Cal. Civ. Code § 3291, which provides for prejudgment interest in actions brought to recover damages for personal injury sustained as a result of a tort.

[58/] Cal. Civ. Code §§ 1032, 1033.5(a)(13); *Bodell Const. Co. v. Trustees of the Cal. State Univ.*, 73 Cal.Rptr.2d 450, 461 n.14 (Cal. App. 1998).

[59/] *Pilimai*, 137 P.3d at 197–48. The Court finds *Bodell Const. Co., supra*, a case that did not involve a collection against the insurer, inapposite and unpersuasive.

include time on the risk, policy limits, combined policy limits/time on the risk, equal shares, and maximum loss.[60]

There is no principled reason why California's "equitable apportionment" rule would not apply in this case. Equitably apportioned, 25.23% (3,964,031/1,000,000) is allocable to Integon, and the balance to the judgment debtors (Susana, *et al.*). Accordingly, at most, Intervenors would be entitled to recover from Integon is the equitably apportioned costs (exclusive of prejudgment interest) incurred in the state court action, $17,132.94 ($67,907 x .02523).

3.  *Prejudgment Interest*

Intervenors have requested an award of prejudgment interest from the date the complaint in intervention was filed. It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a mere procedural mechanism.[61] Thus, in a diversity action, prejudgment interest in a substantive matter governed by state law.[62] Intervenors seek prejudgment interest under California Civil Code § 3287(a), which provides in relevant part:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

Intervenors rely primarily on the decision of the Ninth Circuit in *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,[63] which relied on the decision of a California Court of Appeal in *E. L. White Inc. v. City of Huntington Beach*.[64] For the reasons that follow, the Court finds *Safeway Stores* and *E. L. White* inapposite and unpersuasive.

---

[60] *Employers Mut. Cas. Co.*, 86 Cal. Rptr.3d at 390 (citations omitted).

[61] *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007).

[62] *Id.*; *cf. Klaxon Co. v . Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941) (determining prejudgment interest of a state claim in federal court without even considering the application of federal law, considering instead whether the law of the place where the contract was made or the law of the forum state applied).

[63] 64 F.3d 1281 (9th Cir. 1995).

[64] 182 Cal. Rptr. 879 (Cal. App. 1982).

In *Safeway Stores*, Safeway, after defending and settling shareholders' class action lawsuits, sought reimbursement of the costs under a directors' and officers' liability policy. Safeway provided the insurer with sufficient information to support its claims, the accuracy of which the insurer did not challenge. The insurer contended that Safeway's damages were uncertain because the extent of the allocation between Safeway and the insured directors and officers. The Ninth Circuit, rejected the insurer's argument, holding that "[t]he fact that the amount might be reduced as the result of allocation did not in itself make the amount of damages uncertain." Thus, the Ninth Circuit held that prejudgment interest was recoverable.[65]

In *E. L. White*, White and the City of Huntington Beach were unsuccessful codefendants in two lawsuit. After paying half the judgment, White and its insurer filed suit against Huntington Beach for indemnity. The California Court of Appeal rejected the insurer's argument that the damages were not certain until judgment was entered because the amount of White and Royal Globe's recovery was uncertain until the trial court made its determination of comparative fault. The court awarded plaintiffs prejudgment interest from the date they paid the judgment, holding:

> Here, White and Royal Globe's claim for indemnity was certain in amount from the date the underlying judgments were satisfied, but was subject to a possible reduction if White was found to have been more than vicariously liable. The possibility of that reduction, or even an actual reduction, does not render White and Royal Globe's damages any less certain.[66]

If this were a case in which the only issue was liability, not the measure of damages, the Court would agree with Intervenors. Section 3287(a) does not authorize prejudgment interest as a matter of law where the amount of the damage, as opposed to only the determination of liability, depends on a judicial determination based upon conflicting evidence.[67] In this case, although initially the only question concerned Integon's liability, as noted above, while the case

---

[65] *Safeway Stores*, 64 F.3d at 1290–91.

[66] *E. L. White*, 187 Cal. Rptr. at 887.

[67] *See Lineman*, 195 P.2d at 411; *Esgro Cent., Inc. v. General Ins. Co.*, 98 Cal. Rptr. 153, 158–59 (Cal. App. 1971).

was pending, it changed its character to that of an action by Intervenors to collect their judgment from Integon. Indeed, although Intervenors had a justiciable interest in the outcome of this case from the outset, their right to collect the judgment from Integon did not arise until they became judgment creditors of the insured.[68/] Moreover, the extent of both the insured's and Integon's liability on the policy, even if liable, was not established until judgment was entered in the state court against the insured—January 21, 2011.

In light of the decisions of the California appellate courts, in particular the lack of any authority that damages in a personal injury action are sufficiently certain, or capable of being made certain by calculation, to support an award of prejudgment interest under § 3287(a), this Court cannot say that the California Supreme Court would hold that Intervenors are entitled to prejudgment interest.[69/]

Intervenors claim for prejudgment interest flounders on another shoal. As noted above, under California law, interest is an element of damages, not costs.[70/] Thus, Intervenors claim for prejudgment interest butts against the $1,000,000 policy limit. In this case, however, the policy itself provides for interest accruing *after* judgment is entered against the insured. The Additional Payments clause in the policy provides in relevant part:

> We will pay, in addition to our Limits of Liability:
> \* \* \* \*
> 2. Interest accruing after a judgment is entered in any lawsuit we defend where damages are payable under the terms of this Policy. **Our** duty to pay interest ends

---

[68/] Cal. Ins. Code § 11580(b)(2) (requiring every liability insurance policy include "[a] provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."). This provision is embodied in the California Business Auto Policy, Part V – General Provisions, ¶ 4 "Suits Against Us." Docket No. 1-2, p. 28. *See San Diego Housing Com'n v. Industrial Indemn. Co.*, 116 Cal. Rptr.2d 103, 115–16 (Cal. App. 2002).

[69/] This conclusion is also consistent with the intent of the California Legislature in enacting two separate provisions for the award of prejudgment interest: Cal. Civ. Code § 3287, applicable to actions sounding in contract, and Cal. Civ. Code § 3291, applicable to personal injury actions sounding in tort.

[70/] *Lineman*, 195 P.2d at 411.

when we offer to pay that part of the judgment which does not exceed **our** Limits of Liability.[71]

Under the terms of ¶ 2 of the "Additional Payments" clause in the policy quoted above, interest in excess of the policy amount does, however, accrue from the date of the entry of the judgment in the state court, January 21, 2011, through the date judgment is entered herein,[72] at the rate of ten percent (10%) per annum.[73]

## V.  CONCLUSION

Based upon the foregoing, the Court concludes that:

1.  Plaintiff Integon Preferred Insurance Co. is not entitled to rescind Policy No. CAC 2695291;

2.  As between Plaintiff Integon Preferred Insurance Company and Intervenors Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr., the insurance policy was in full force and effect as of the date of the accident in which Scott Ryan Eisenbrandt, Jr. was killed;

3.  Integon Preferred Insurance Company is liable to the Intervenors Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr., for the judgment for damages entered in the California state court against Susana Isztojka to the full face amount of the policy;

4.  Intervenors Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr., are entitled to recover from Integon Preferred Insurance Company interest on the full amount of the policy from the date judgment was entered in Intervenors favor against Susana Isztojka; and

5.  As the prevailing parties, Intervenors Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr., are entitled to their taxable costs of suit incurred herein.[74]

---

[71] Docket No. 1-2, p. 20.

[72] *See State Farm Mut. Ins. Co. v. Crane*, 266 Cal. Rptr. 422, 425 (Cal. App. 1990).  The Court notes that, as discussed above, p. 11, n. 43, had Intervenors been less dilatory in obtaining a final judgment in the state court, prejudgment interest in this case would have been awarded from that earlier date.

[73] Cal. Civ. Code § 3289(b).

[74] Fed. R. Civ. P. 54(d)(1).

VI.  ORDER

**IT IS HEREBY ORDERED THAT** Plaintiff Integon Preferred Insurance Company's Renewed Rule 50 Motion at Docket No. 153 is **DENIED.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT** Intervenors Francesca Eisenbrandt, Connie Eisenbrandt, and Scott Eisenbrandt, Sr., the survivors of the decedent, recover from Plaintiff Integon Preferred Insurance Company the full face amount of Policy Number CAC 2695291, in the amount of $1,000,000, with prejudgment interest thereon from January 21, 2011, at the rate of ten percent (10%) per annum, together with the taxable costs of suit incurred herein.

The Clerk of the Court is directed to enter judgment accordingly.

Dated:  April 27, 2011

s/ Timothy M. Burgess<br>TIMOTHY M. BURGESS<br>United States District Judge